UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SANDRA HOWELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:14-cv-00555-TWP-DML |
| | ) |
| IMC CREDIT SERVICES, LLC, | ) |
| | ) |
| Defendant. | ) |

**ENTRY ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT**

Before the Court are the parties' cross motions for summary judgment. On April 11, 2014, Plaintiff Sandra Howell ("Howell"), filed a Complaint alleging multiple violations of the Fair Debt Collection Practices Act ("FDCPA"), stemming from a dunning letter sent by Defendant, IMC Credit Services, LLC ("IMC"). Specifically, Howell alleges the dunning letter misrepresented the character of her debt because it did not identify the name of the creditor and stated that she "may" owe multiple accounts for multiple creditors. IMC filed a Motion for Summary Judgment on July 17, 2015 (Filing No. 39). Thereafter, on August 14, 2015, Howell filed a cross Motion for Summary Judgment (Filing No. 43). For the following reasons, this Court denies Howell's motion for summary judgment and grants IMC's motion for summary judgment.

**I. BACKGROUND**

The following facts are taken directly from the parties' briefs and exhibits attached thereto. In large part, the parties do not dispute the following facts. However, where there is disagreement, the Court has attempted to highlight the competing factual interpretations with citations to the exhibits as necessary.

On May 17, 2013, Howell, received medical services costing $700.00 from Community Westview Hospital ("Hospital"). On June 25, July 25, and August 26, 2013, the Hospital sent three letters to Howell requesting payment of the $700.00 bill. (Filing No. 41-1.) Each of these letters referenced Howell's Hospital account number and the $700.00 balance. (Filing No. 41-1.) When Howell did not pay her debt, the Hospital placed Howell's account with IMC for collection.

IMC made a total of six communications to Howell regarding her debt with the Hospital. On October 20, 2013, IMC sent an initial-communication letter to Howell, containing the following relevant language:

> Creditor: WESTVIEW HOSPITAL
> Creditor Ref. #: [Account Number Redacted]
> Balance Due: $700.00
> Account #: [Account Number Redacted]
> Patient: Sandra Howell

(Filing No. 41-2 at 13).

On December 27, 2013, IMC left a voicemail on Howell's landline which identified the caller as "Debbie with IMC, a debt collector" and stated in relevant part, "[w]e are calling in reference to your account with Westview Hospital…."

On December 29, 2013, IMC sent Howell another letter containing the following relevant language:

> The following account(s) totaling $700.00 have been placed at IMC Credit Services for collection and remain unpaid. . . .
>
> | Client Name | Client Account Number | Last Charge Date | Amount Due |
> |---|---|---|---|
> | WESTVIEW HOSPITAL | [Account Number Redacted] | 05/17/13 | 700.00 |

(Filing No. 41-2 at 10).

2

Thereafter, on January 10 and January 24, 2014, IMC left two additional voicemails on Howell's landline, which again identified the caller as "Debbie with IMC, a debt collector" and again stating in relevant part, "[w]e are calling in reference to your account with Westview Hospital…."

Finally, on February 5, 2014, IMC sent Howell a third letter, containing the following relevant language, with emphasis in the original:

> Balance Due: $700.00
> Account #: [Account Number Redacted]
> Responsible Party: SANDRA HOWELL
>
> Your balance may include more than one account for multiple creditors.

(Filing No. 41-2 at 8).

Howell alleges that the third letter, which contained the phrase "may include more than one account for multiple creditors" was harassing, misleading, and constituted an unconscionable method of debt collection. Specifically, the phrase "may include," coupled with the fact that the Hospital was not identified as the creditor on the letter, was confusing. (Filing No. 44-4 at 2.) Despite her asserted confusion and although Howell states that the phrase "multiple creditors" meant "various" and "many" to her, she also conceded that the phrase "may include more than one account" does not necessarily include more than one account. (Filing No. 44-4 at 3; Filing No. 41-2 at 6.)

## II. LEGAL STANDARD

Summary judgment is only appropriate by the terms of Rule 56 where there exists "no genuine issue as to any material facts and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. This notion applies equally where, as here, opposing parties each move for summary judgment in their favor pursuant to Rule 56. *I.A.E., Inc. v. Shaver*, 74 F.3d

768, 774 (7th Cir. 1996).  Indeed, the existence of cross-motions for summary judgment does not necessarily mean that there are no genuine issues of material fact.  *R.J. Corman Derailment Serv., Inc. v. Int'l Union of Operating Eng'rs.*, 335 F.3d 643, 647 (7th Cir. 2003).  Rather, the process of taking the facts in the light most favorable to the non-movant, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial.  *Id.* at 648.  "With cross-motions, [the court's] review of the record requires that [the court] construe all inferences in favor of the party against whom the motion under consideration is made."  *O'Regan v. Arbitration Forums, Ins.*, 246 F.3d 975, 983 (7th Cir. 2001) (quoting *Hendricks–Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)).

A court is not permitted to conduct a paper trial on the merits of a claim and may not use summary judgment as a vehicle for resolving factual disputes.  *Ritchie v. Glidden Co., ICI Paints World-Grp.*, 242 F.3d 713, 723 (7th Cir. 2001); *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).  Indeed, a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts.  *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) ("these are jobs for a factfinder"); *Hemsworth*, 476 F.3d at 490.  Instead, when ruling on a summary judgment motion, a court's responsibility is to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial.  *Id*.

### III.  DISCUSSION

Howell alleges that the failure to identify the name of the creditor and the language "may include more than one account for multiple creditors" in IMC's third dunning letter was harassing, misleading, and constituted an unconscionable method of debt collection, violating sections 1692d, 1692e, and 1692f, respectively, of the FDCPA.

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692e. Section 1692d prohibits the use of "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Examples of such prohibited conduct include, the threat of use of violence, the use of obscene or profane language, the publication of the list of consumers who allegedly refuse to pay debts, the advertisement for sale of any debt with the intent to coerce payment, repeated telephone conversations with the intent to annoy, abuse, or harass, and making telephone calls without meaningful disclosure of the caller's identity. *Id*.

Section 1692e prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Specifically, § 1692e(2)(A) prohibits the false representation of the character, amount, or legal status of any debt.

Section 1692f prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt". 15 U.S.C. § 1692e. Section 1962f provides a non-exhaustive list of examples of unfair or unconscionable actions, though Howell does not articulate any facts that would implicate any one in particular.

When a debt collector is accused of engaging in practices that violate the FDCPA, the allegedly offending practices must be viewed from the "objective standard of an 'unsophisticated debtor[1].'" *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000); *Beeson v. Med-1 Sols., LLC*, No. 1:06-cv-1694-SEB, 2008 WL 4443224, at *4 (S.D. Ind. Sept. 25,

---

[1] This is also, often and interchangeably, referred to as the "unsophisticated consumer" standard.

2008), *subsequent final judgment vacated on procedural grounds but the substance of the original order was upheld*, 2008 WL 4545333 (Oct. 8, 2008). The objective unsophisticated debtor standard envisions a debtor who, "possesses rudimentary knowledge about the financial world, is wise enough to read collection notices with added care, possesses reasonable intelligence, and is capable of making basic logical deductions and inferences." *Petitt*, 211 F.3d at 1060 (internal quotations omitted). Therefore, "a statement will not be confusing or misleading unless a significant fraction of the population would be similarly misled" *Id*. ("we don't believe that the unsophisticated debtor standard should be tied to 'the very last rung on the sophistication ladder.'"). Further, debt collectors are shielded from liability because of "unrealistic or peculiar interpretations of collection letters." *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994); *see also Petitt*, 211 F.3d at 1060 ("while our unwary debtor may tend to read collection letters literally, he does not interpret them in a bizarre or idiosyncratic function.").

Although, in her Complaint, Howell alleges violations under §§ 1692d and 1692f of the FDCPA, in her briefs, Howell primarily focuses on the alleged violation of §1692e. As stated previously, Howell contends that the phrase "may include more than one account for multiple creditors", along with the omitted name of the creditor in the February 2014 letter, was impermissibly misleading.

"[M]ere speculation that a collection letter confuses the unsophisticated debtor is not enough for an FDCPA plaintiff to survive an opposing debt collector's summary judgment motion." *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 419 (7th Cir. 2005). Instead, the Seventh Circuit recognizes three categories of deceptive or misleading statements. *See Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012); *Karr v. Med-1 Sols., LLC*, No. 1:12-cv-01182-DKL, 2014 WL 1870928, at *4 (S.D. Ind. May 7, 2014). The first category includes cases that involve

language that is plainly and clearly not misleading. *Id*. In those cases, extrinsic evidence is not necessary to show that the reasonable unsophisticated debtor would not be confused by the language. *Id*. The second category of cases involves language that is not misleading or confusing on its face, but has the potential to be misleading to the unsophisticated debtor. *Lox*, 689 F.3d at 822; *Karr*, 2014 WL 1870928, at *4. In those cases, plaintiffs prevail only by producing extrinsic evidence, such as consumer surveys, to prove that unsophisticated debtors are misled or deceived by the language. *Id*.; *see also Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 419 (7th Cir. 2005). The third category of cases involves language that is clearly misleading or deceptive. *Id*. In those cases, extrinsic evidence is not necessary to show that the reasonable unsophisticated debtor would be confused by the language. *Id*.

In her effort to establish that the challenged phrase was impermissibly misleading, Howell argues that the facts in this case are nearly identical to the facts in *Fields v. Wilber Law Firm*, *Smith v. Am. Revenue Corp.* 383 F.3d 562 (7th Cir. 2004*)*, and *Moran v. Green & Cooper Attorneys LLP*, 42 F. Supp. 3d 907 (S.D. Ind. 2014). While this case has some similarities to those cases, this Court disagrees that the facts are similar enough to mandate a similar result in this case.

In *Fields v. Wilber Law Firm*, the Seventh Circuit held that an initial dunning letter, combining an initial debt amount with the collecting law firm's attorney's fees in a lump sum, was impermissibly misleading. *Fields* at 565-666. In so concluding, the court reasoned that the unsophisticated debtor would not be able to ascertain from the letter the reasons why her initial debt had nearly tripled in size, particularly when the letter did not explain that the amount listed included attorney's fees. *Id*. at 566. Instead, the court said the various charges should have been itemized so that the debtor could "knowledgably assess the validity of the debt." *Id*.

In *Smith v. Am. Revenue Corp.*, a court in the Northern District of Indiana held that a follow-up dunning letter, combining the amounts due from three creditors and fourteen accounts in a lump sum and asserting that the amount owed was for "various accounts", was similarly misleading. No. 2:04-CV-00199-PRC, 2005 WL 1162906, at *5-7 (N.D. Ind. May 16, 2005). In so concluding, the court reasoned that the unsophisticated debtor would not be able to ascertain from the letter who the creditors were or how much was due on each account. *Id*. at 6. The court opined that such misleading statements made it impossible for the debtor to prioritize payment on the different accounts or for the debtor to be assured that payments were actually being made to each of the accounts. *Id*. at *7. Analogizing the facts of the case to *Fields*, the court similarly concluded that the defendant debt collector should have itemized the various accounts rather than combine the amounts owed in a lump sum. *Id*.

Finally, in *Moran*, a court in this District held that an initial dunning letter, combining the initial debt amount with an inaccurately high amount of interest and failing to name the original creditor, was impermissibly misleading. *Moran* at 913-916. In so concluding, the court reasoned that an unsophisticated debtor would not be able to ascertain from the letter which debt was being collected or what rate of interest was being assessed on the debt. *Id*.

One key difference between Howell's facts and these cases, is the fact that the Hospital and IMC attempted to collect only one debt from Howell and always in the same amount of $700.00. (*See* Filing No. 44-4 at 2.) Specifically IMC a asserts that the letter at issue sought payment for the same $700.00 balance as the previous five (5) written notices and also included IMC's account number, which had been included on other correspondence sent from IMC to Howell. (Filing 45 at 5.) Unlike *Fields* and *Moran*, IMC's dunning letter did not attempt to collect attorney's fees or interest on the initial debt. Further, the dunning letter sent to Howell only

8

attempted to collect for one creditor on one account, not three creditors and fourteen accounts like the letter in *Smith*. Accordingly, while the letter sent to Howell was technically incorrect when it stated that the amount requested "may include more than one account for multiple creditors" (emphasis in the original), because the letter did not actually attempt to collect multiple amounts from multiple creditors, the letter does not suffer from the same confusing circumstances as the cases cited. *See Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 757 (7th Cir. 2009) ("[t]he [FDCPA] is designed to provide information that helps consumers to choose intelligently, and by definition immaterial information neither contributes to that objective (if the statement is correct) nor undermines it (if the statement is incorrect)."). The upshot of *Wahl*, 556 F.3d at 646, 2007 WL 3071678, *2-3 is that, "[i]f a statement would not mislead the unsophisticated consumer, it does not violate the [Act]-even if it is false in some technical sense." *Id*. A statement cannot mislead unless it is material, so a false but non-material statement is not actionable. *Hann* at 758.

This conclusion is further bolstered when this Court considers the allegedly misleading letter in relation to the other communications sent by IMC and the Hospital in collection of the same debt. *Compare Beeson*, 2008 WL 4443224, at *5-7 (considering the totality of the debt collector's actions and communications to determine that a singular misstatement as to the proper owner of a debt obligation was not misleading). Indeed, in the nine months after Howell incurred the initial debt obligation, IMC and the Hospital reached out to Howell a total of nine times regarding the same, singular debt. In all but the last communication, both IMC and the Hospital indicated that they were attempting to collect on the Hospital debt. Further, Howell admits that, in the three prior dunning letters from IMC and the three collection letters from the Hospital, the amount requested was always the same, $700.00, and never included additional amounts for items

such as attorney's fees, interest, or other outstanding balances on other accounts. (*See* Filing No. 44-4 at 2.)

While it may be that Howell has additional debts and may even have some that are close to $700.00, she did not include any evidence of such, either as an exhibit or in an affidavit. Instead, her claim rests entirely on her assertion that on the ninth communication regarding the same debt and the sixth communication by IMC, she was suddenly confused as to whom she owed $700.00. While this Court is mindful that the unsophisticated debtor may lose track of their debts, *see Fields*, 383 F.3d at 566, "given the frequency and clarity" of IMC's assertions in the repeated correspondence, an unsophisticated debtor would not have been confused by the letter. *See Beeson*, 2008 WL 4443224, at *5-7 (considering the totality of the debt collectors actions and correspondence with the debtor).

Further, although *Fields* held that a debt collector's misleading statements are not immaterial simply because a debtor can refer to prior communications to sort out the confusion, the *Fields* court came to this conclusion because the amount requested in the offending dunning letter did not reflect solely the original debt but also added undisclosed attorney's fees as a lump sum, making it unnecessarily difficult for the debtor to determine which debts were owed and in what amount. *See Fields*, 383 F.3d at 566 ("even if [the debtor] had saved her contract from nearly nine months earlier, the unsophisticated debtor would not necessarily understand that [the collecting attorney] was seeking $250 in attorney's fees, an amount allowed, but not specified in the contract."). Howell has presented no such similarly complicating facts here.

Further, even if this Court were to consider the allegedly offending phrase in IMC's letter to be misleading, construing all factual inferences in Howell's favor to the farthest extent possible, this Court still does not consider the statement to be "plainly and clearly misleading". *See Lox*,

689 F.3d at 822; *Karr*, 2014 WL 1870928, at *4. Instead, at the very most, the language only "has the potential to be misleading to the unsophisticated [debtor]." *See Id*. As such, in order to establish her FDCPA claim, Howell must submit extrinsic evidence, such as consumer surveys, to objectively prove that unsophisticated debtors would be misled or deceived by the language. *Id*.; *see also Durkin*, 406 F.3d at 419. Howell has submitted no such evidence, further dooming her FDCPA claim under § 1692e. *See Durkin*, 406 F.3d at 419 ("[M]ere speculation that a collection letter confuses the unsophisticated debtor is not enough for an FDCPA plaintiff to survive an opposing debt collector's summary judgment motion."). Accordingly, because Howell cannot demonstrate a viable violation of § 1692e of the FDCPA, IMC is entitled to summary judgment regarding that alleged violation.

In addition, to the extent it remains necessary, this Court notes that Howell submitted very little additional evidence or argument to explain how the allegedly offending phrase was either "harassing" or "unconscionable". The closest Howell comes to making such an argument is her assertion that, because IMC admitted that the allegedly offending phrase is often included in IMC dunning letters to other customers who have outstanding debts from multiple accounts, IMC must have included the offending phrase in Howell's letter with the intent to harass and deceive her. This shoe-string argument, based entirely on Howell's speculation alone, is not sufficient to state a viable claim under either § 1692d or § 1692f. Without more, this Court similarly concludes that Howell cannot demonstrate a viable violation of either section of the FDCPA, entitling IMC to summary judgment regarding those alleged violations as well.

## IV. CONCLUSION

For the reasons above, the Court **DENIES** Howell's Motion for Summary Judgment (Filing No. 39), and **GRANTS** IMC's Motion for Summary Judgment (Filing No. 43). Final judgment will be entered in a separate order.

**SO ORDERED.**

Date: 11/2/2015

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Michael Anthony Eades
JOHN STEINKAMP AND ASSOCIATES
steinkamplaw@yahoo.com

John Thomas Steinkamp
JOHN T. STEINKAMP AND ASSOCIATES
steinkamplaw@yahoo.com

Nicholas Ward Levi
KIGHTLINGER & GRAY
nlevi@k-glaw.com

Peter A. Velde
KIGHTLINGER & GRAY
pvelde@k-glaw.com